RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

EDMER EUDULIO BARRIOS GARCIA (21-1037); DOUGLAS ARGUIJO (21-1056); ARDILES YASDAMI MENDEZ MENDEZ and LIMNY ERIVELBA LOPEZ MAZARIEGOS (21-1063),

> Nos. 21-1037/1056/1063

*Plaintiffs-Appellants*,

*v.*

U.S. DEPARTMENT OF HOMELAND SECURITY et al.,

*Defendants-Appellees*.

SUDHABEN PANKAJKUMAR PATEL, PANKAJKUMAR ISHWARLAL PATEL, NIKIBEN PANKAJKUMAR PATEL, and SAHILKUMAR PANKAJKUMAR PATEL (21-5022),

*Plaintiffs-Appellants*,

> No. 21-5022

*v.*

TRACY RENAUD, Senior Official Performing the Duties of the Director for U.S. Citizenship and Immigration Services,

*Defendant-Appellee*.

Case Nos. 21-1037, 21-1056, and 21-1063

Appeals from the United States District Court for the Western District of Michigan at Grand Rapids;
Nos. 1:20-cv-00457; 1:20-cv-00378; 1:20-cv00460—Phillip J. Green, Magistrate Judge.

Case No. 21-5022

Appeal from the United States District Court for the Eastern District of Kentucky at London;
6:20-cv-00101—Karen K. Caldwell, District Judge.

Argued: July 21, 2021

Decided and Filed: February 10, 2022

Before: SILER, MOORE, and DONALD, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Bradley B. Banias, WASDEN BANIAS, LLC, Charleston, South Carolina, for all Appellants. Elizabeth R. Veit, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees in 21-1037 and 21-1063. T. Monique Peoples, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees in 21-1056 and 21-5022. **ON BRIEF:** Bradley B. Banias, WASDEN BANIAS, LLC, Charleston, South Carolina, for all Appellants. James Betzold, BETZOLD LAW PLC, Holland, Michigan, for Appellants in 21-1037, 21-1056, and 21-1063. T. Monique Peoples, Elizabeth R. Veit, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

**AMENDED OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Edmer Eudulio Barrios Garcia, Doublas Arguijo, Ardiles Yasdami Mendez Mendez, and Sudhaben Pankajkumar Patel are noncitizens. They were victims of grave crimes; they cooperated with law enforcement. They applied for U-visas and authorization to work; Mendez Mendez and Patel sought derivative U-visas and work authorization for some of their family members. These noncitizens have waited years for U.S. Citizenship and Immigration Services (USCIS)—a division of the Department of Homeland Security (DHS)—to adjudicate their applications. Plaintiffs have been and remain unable to obtain lawful employment, to visit their family members who live abroad, or to attain deferred-action status that would protect them from removal from this country. Plaintiffs sued USCIS and DHS, alleging that the agencies have unreasonably delayed placing the principal applicants on the U-visa waitlist and adjudicating Plaintiffs' work-authorization applications. While this appeal pended, USCIS announced a new program for persons with pending U-visa applications known as the "Bona Fide Determination Process." The parties contest whether this nascent program moots Plaintiffs' claims.

We must decide whether this case is moot, whether the Administrative Procedure Act (APA) allows the federal courts to review Plaintiffs' two claims, the scope of our review, and the claims' sufficiency. We hold that the issuance of the Bona Fide Determination Process moots no

part of this case. We further hold that 5 U.S.C. § 701(a)(1), 8 U.S.C. § 1252(a)(2)(B)(ii), and 5 U.S.C. § 701(a)(2) do not prevent the federal courts from reviewing claims that USCIS has unreasonably delayed placing principal petitioners on the U-visa waitlist and adjudicating prewaitlist work-authorization applications. We hold that the federal courts may compel USCIS to place principal petitioners on the U-visa waitlist when an unreasonable delay has occurred per 5 U.S.C. § 706(1). We conclude that 8 U.S.C. § 1184(p)(6) and the Bona Fide Determination Process require USCIS to decide whether a U-visa application is "bona fide" before the agency can exercise its discretion and decide whether principal petitioners and their qualifying family members may receive Bona Fide Determination Employment Authorization Documents. We thus hold that 5 U.S.C. § 706(1) permits the federal courts to hasten an unduly delayed "bona fide" determination. But we also hold that § 706(1) does not allow the federal courts to force USCIS to adjudicate prewaitlist work-authorization applications.

To that end, we conclude that Plaintiffs have pleaded sufficient facts that the principal petitioners' delayed waitlist determinations have harmed Plaintiffs' health and welfare; Plaintiffs' waitlist claim should thus survive the Government's motions to dismiss. Although we cannot review Plaintiffs' work-authorization claim, the implementation of the Bona Fide Determination Process during this appeal compels us to conclude that Plaintiffs should be permitted to amend their complaints should they wish to challenge any delayed "bona fide" determinations. We thus **REVERSE** and **REMAND**.

## I. BACKGROUND

Congress has authorized DHS to grant U-visas to noncitizen victims of serious crimes who cooperate with law enforcement and to the noncitizens' qualifying family members. *See* 8 U.S.C. §§ 1103(a)(1), 1101(a)(15)(U); 8 C.F.R. § 214.14(a)(10). Management of the U-visa application process is delegated to USCIS, an agency within DHS. *See* 6 U.S.C. § 112(b)(1); 8 C.F.R. § 214.14. Noncitizens can petition for U-nonimmigrant status by filing an I-918 form and for work authorization by filing an I-765 form; they can seek U-nonimmigrant status for their qualifying family members by filing a supplement to the I-918 form. *See* 8 C.F.R. § 214.14(c)(1), (c)(7), (f)(2), (f)(7). The principal petitioner must be granted U-nonimmigrant status in order for any qualifying family member to receive derivative U-nonimmigrant status.

*See id.* § 214.14(d)(2), (f)(2); USCIS, POLICY MANUAL, Vol. 3, Part C, Ch. 2, § B, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-2 (last visited July 27, 2021).

Congress capped the number of U-visas that can be granted to principal applicants at 10,000. *See* 8 U.S.C. § 1184(p)(2)(A). The cap does not apply to qualifying family members. *See id.* § 1184(p)(2)(B); 8 C.F.R. 214.14(f)(6)(i). But far more than a myriad of persons are eligible for and have sought U-visas. In 2020, USCIS received 22,358 U-visa applications from victims of crime and 14,090 derivative petitions from the victims' family members. As of last year, there were 161,708 pending U-visa applications and 108,366 pending derivative petitions. USCIS, NUMBER OF FORM I 918, PETITION FOR U NONIMMIGRANT STATUS BY FISCAL YEAR, QUARTER, AND CASE STATUS, https://www.uscis.gov/sites/default/files/document/reports/I918u_visastatistics_fy2020_qtr4.pdf.

To accommodate this deluge of applications, DHS promulgated a three-step waitlist framework for U-visa applicants: (1) a U-visa application is submitted; (2) an application is approved and the petitioner is put on the U-visa waitlist; and (3) a U-visa is granted. *See* 8 C.F.R. § 214.14.

First, a person petitions USCIS for U-nonimmigrant status for themselves and derivative U-nonimmigrant status for their qualifying family members by filing an I-918 form and appropriate supplements. *See* 8 U.S.C. § 1101(a)(15)(U)(i); 8 C.F.R. § 214.14(c)(1), (f)(1), (f)(2). USCIS considers whether the principal applicant is eligible for a U-visa. *See* 8 U.S.C. § 1101(a)(15)(U)(i), (iii). Under 8 U.S.C. § 1184(p)(6), "[t]he [DHS] Secretary may grant work authorization to any [noncitizen] who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." But, until June 14, 2021, DHS had never implemented a regime to grant work authorization to persons with "pending, bona fide" U-visa applications. We return to this later.

Second, if USCIS decides that the principal petitioner qualifies for a U-visa but cannot be granted the visa solely because of the 10,000-person cap, USCIS approves the application and the applicant "must be placed on [the] waiting list" per DHS regulations. 8 C.F.R. § 214.14(d)(2). When a principal petitioner is placed on the waitlist, they and their qualifying

family members "will" be accorded deferred-action status, and USCIS maintains "discretion" to grant them work authorization. *Id.*

Third, USCIS grants the principal applicant's U-visa and accords U-nonimmigrant status to the petitioner and their qualifying family members. *Id.* § 214.14(c)(5), (f)(6). USCIS automatically issues employment authorization to the noncitizens per 8 U.S.C. § 1184(p)(3)(B)—which stipulates that "the Attorney General shall . . . provide the [noncitizen] with employment authorization"—and DHS regulations, *see* 8 C.F.R. 214.14(c)(7), (f)(7).

Edmer Eudulio Barrios Garcia, Doublas Arguijo, Ardiles Yasdami Mendez Mendez, and Sudhaben Pankajkumar Patel are noncitizens. They were victims of serious crimes, and they cooperated with law enforcement. They have applied for U-visas—becoming principal petitioners—and work authorization. Mendez Mendez and Patel have sought derivative U-nonimmigrant status and work authorization for some of their family members. USCIS has not placed the principal petitioners on the U-visa waitlist; nor has the agency approved the noncitizens' work-authorization applications. So all these noncitizens are stuck at step one of the three-tier waitlist framework.

The principal petitioners and their qualifying family members sued USCIS and DHS, raising two claims. Plaintiffs complain that the agencies have unreasonably delayed or unlawfully withheld placing the principal petitioners on the U-visa waitlist and adjudicating Plaintiffs' work-authorization applications. *See* Barrios Garcia R. 22 (First Am. Compl. at 11–24) (Page ID #151–64); Arguijo R. 28 (Second Am. Compl. at 11–24) (Page ID #207–20); Mendez Mendez R. 20 (First Am. Compl. at 12–24) (Page ID #121–33); Patel R. 1 (Compl. at 11–19) (Page ID #11–19).

The Western District of Michigan dismissed Barrios Garcia's, Arguijo's and the Mendez Mendezes' cases and the Eastern District of Kentucky dismissed the Patels' suit. The Michigan district court found that the federal courts lack subject-matter jurisdiction to consider the waitlist and work-authorization claims; the Kentucky district court found that it had subject-matter jurisdiction over the former but not the latter claim. Both courts found that Plaintiffs had failed to state a claim that USCIS had unreasonably delayed putting the principal petitioners on the

U-visa waitlist. *See generally Barrios Garcia v. United States Dep't of Homeland Sec.*, 507 F. Supp. 3d 890 (W.D. Mich. 2020); *Arguijo v. United States Dep't of Homeland Sec.*, No. 1:20-cv-378, 2020 WL 7585809 (W.D. Mich. Dec. 16, 2020); *Mendez v. United States Dep't of Homeland Sec.*, 507 F. Supp. 3d 882 (W.D. Mich. 2020); *Patel v. Cuccinelli*, No. CV 6:20-101-KKC, 2021 WL 77459 (E.D. Ky. Jan. 8, 2021). Plaintiffs appealed, and we consolidated their appeals.

During the pendency of these appeals, the parties jointly filed a Federal Rule of Appellate Procedure 28(j) letter. CA6 No. 21-1037 R. 31 (28(j) Letter). According to the letter, USCIS updated its Policy Manual on June 14, 2021, to implement a new "Bona Fide Determination Process" (BFD process). USCIS, POLICY ALERT at 2 (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf [hereinafter POLICY ALERT]. The BFD process is now found in Volume 3, Part C, Chapter 5 of the Policy Manual. *See* USCIS, POLICY MANUAL, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited July 27, 2021) [hereinafter BFD PROCESS]. USCIS immediately implemented the BFD process, which applies to all I-918 petitions that are pending or filed on or after June 14, 2021. *See* POLICY ALERT, *supra*, at 2.

The BFD process outlines the following procedure. When USCIS receives an I-918 form, USCIS "first determines whether [the] pending petition is bona fide." BFD PROCESS, *supra*, Introduction; *see also* POLICY MANUAL, *supra*, Vol. 3, Part C, Ch. 5, APPENDIX: BONA FIDE DETERMINATION PROCESS FLOWCHART, https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf (last visited July 27, 2021) [hereinafter FLOWCHART]. The manual defines "bona fide" as "made in good faith; without fraud or deceit" and explains what a bona fide determination entails. BFD PROCESS, *supra*, Introduction & n.3 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

If USCIS decides that the U-visa application *is not* bona fide, the agency puts the application on the waitlist track. USCIS assesses whether the principal petitioner is eligible for the U-visa waitlist. If the applicant is deemed eligible, USCIS places them on the waitlist and

decides whether to grant them work authorization.  The principal petitioner is then placed in a pool of persons waiting for USCIS to grant them a U-visa.  *See* FLOWCHART, *supra*.  If the petitioner is considered ineligible for the waitlist, their U-visa petition is denied.  *See* FLOWCHART, *supra*; BFD PROCESS, *supra*, § C.

If USCIS decides that the U-visa application *is* bona fide, the agency puts the principal petitioner on the BFD Employment Authorization Document (EAD) track.  *See* FLOWCHART, *supra*; BFD PROCESS, *supra*, § B.  USCIS "in its discretion[] determines whether the petitioner poses a risk to national security or public safety" and whether "other adverse factors weigh against a favorable exercise of discretion" "on a case-by-case basis."  BFD PROCESS, *supra*, Introduction & § B.  "If USCIS determines [that] a principal petitioner and any other qualifying family members have a bona fide petition and warrant a favorable exercise of discretion, USCIS issues them BFD EADs and grants deferred action."  *Id.* § C.  Only if the principal petitioner receives a BFD EAD does USCIS adjudicate whether the qualifying family members' I-918 supplement is bona fide and whether the family members are entitled to BFD EADs.  *See* BFD PROCESS, *supra*, § A.2.  The principal petitioner is then placed in a pool of persons awaiting the grant of a U-visa.  *See* FLOWCHART, *supra*.  But if USCIS decides not to issue a BFD EAD to a principal petitioner, the agency considers whether the principal petitioner is eligible for the waitlist. *See id.*

To tie everything together, U-visa principal applicants and their qualifying family members may now receive work authorizations via two, distinct tracks:  the BFD EAD track or the waitlist track.  If a principal petitioner is granted a BFD EAD, USCIS does not place the applicant on the U-visa waitlist.  And a person on the waitlist is not issued a BFD EAD—they are granted a separate work authorization.  USCIS operates a one-way switch between the tracks:  USCIS may switch a principal petitioner on the BFD EAD track over to the waitlist track but not vice versa.  Specifically, if USCIS decides that it *will* not issue a BFD EAD to a principal petitioner, the agency will consider whether the petitioner is eligible to be placed on the waitlist.  But if USCIS decides that a principal petitioner is not eligible for the waitlist, the agency outright denies their U-visa application; the noncitizen is not put on the BFD EAD track.  *See* FLOWCHART, *supra*.

In their joint Rule 28(j) letter, the parties also disputed whether the newly issued BFD process moots this case.  CA6 No. 21-1037 R. 31 (28(j) Letter at 2).  We sought and received additional briefing on the question of mootness.  *See* Plaintiffs' Letter Br. at 1; Gov't Letter Br. at 1.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo the dismissal of a case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *Mohlman v. Fin. Indus. Regul. Auth.*, 977 F.3d 556, 558 (6th Cir. 2020).  After construing the complaints in the light most favorable to Plaintiffs, we must determine whether the complaints have stated a claim upon which relief can be granted.  *Daunt v. Benson*, 999 F.3d 299, 307–08 (6th Cir. 2021).

### B.  Jurisdiction

The district courts, the parties, and other courts have framed the issues in this case as a question of subject-matter jurisdiction.  *See* Barrios Garcia Br. at 10; Gov't Br. at 15;[1] *see, e.g.*, *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir. 2021).[2]  The APA does not independently grant subject-matter jurisdiction to the federal courts.  *See Califano v. Sanders*, 430 U.S. 99, 105–06 (1977).  Notably, the Court does not refer to "jurisdiction" in its opinions addressing APA § 706 and § 701. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–65 (2004) (interpreting 5 U.S.C. § 706); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, — U.S. —, 140 S. Ct. 1891, 1905–07 (2020) (discussing 5 U.S.C. § 701(a)(2)); *Heckler v. Chaney*, 470 U.S. 821, 828–35 (1985) (distinguishing 5 U.S.C. §§ 706, 701(a)(1), and 701 (a)(2)).  Rather, the

---

[1]Because the same lawyer represents all Plaintiffs on appeal, the parties' briefs in each case contain largely identical analyses.  To save space, we sometimes cite only Barrios Garcia's brief and the Government's brief in Barrios Garcia's case when referring to Plaintiffs' and the Government's arguments in all four cases.

[2]Earlier this year, the Fourth Circuit addressed in a case called *Gonzalez v. Cuccinelli* the same issues presented in this case.  The *Gonzalez* court decided that (1) the federal courts lack "jurisdiction" over the prewaitlist work-authorization claims; (2) the federal courts can review the waitlist claims; and (3) unreasonable-delay claims should not be resolved at the motion-to-dismiss stage.  *See Gonzalez*, 985 F.3d at 361–62.  We agree with the Fourth Circuit's second and third conclusions, but we part ways with *Gonzalez*'s first conclusion.  Yet, as we explain below, *see infra* notes 4, 7, 8, *Gonzalez* is perfectly compatible with our treatment of Plaintiffs' work-authorization claims.

federal courts' subject-matter jurisdiction in APA cases is bestowed by 28 U.S.C. § 1331, the federal-question jurisdiction statute. *See Califano*, 430 U.S. at 106–07. In this case, we consider whether the APA cabins judicial review and whether another statute—specifically 8 U.S.C. § 1252(a)(2)(B)(ii)—independently strips the federal courts of subject-matter jurisdiction over Plaintiffs' claims.

## C. Mootness

We start with whether the recent issuance of the BFD process moots this case. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). The Government argues that Plaintiffs' "claim that USCIS has a duty to implement a pre-waitlist work authorization program is moot" because "USCIS has chosen to implement a pre-waitlist work authorization program pursuant to its discretionary authority under 8 U.S.C. § 1184(p)(6)." Gov't Letter Br. at 2–3.

Contrary to the Government's framing, Plaintiffs do not challenge the Government's failure to institute a program for processing prewaitlist work-authorization applications. *Cf.* Gov't Letter Br. at 2–8. Rather, Plaintiffs contest a more basic wrong: that USCIS and the Department of Homeland Security (DHS) have unreasonably delayed the adjudication of Plaintiffs' work-authorization applications. *See* Barrios Garcia R. 22 (First Am. Compl. at 11–15) (Page ID #151–55); Arguijo R. 28 (Second Am. Compl. at 11–15) (Page ID #207–11); Mendez Mendez R. 20 (First Am. Compl. at 12–15) (Page ID #121–24); Patel R. 1 (Compl. at 11–14) (Page ID #11–14); Barrios Garcia Br. at 8; Plaintiffs' Letter Br. at 3, 6. Notwithstanding the recent iteration of the BFD process, Plaintiffs' work-authorization applications remain unadjudicated. Indeed, the Government tucks this concession into a footnote: "the BFD Process does not moot Appellants' claim that USCIS has unreasonably delayed or withheld pre-waitlist work authorization under § 1184(p)(6)." Gov't Letter Br. at 3 n.2. Plaintiffs' work-authorization claim lives on, and Plaintiffs maintain a legally cognizable interest in the outcome of this issue. *Cf. Powell*, 395 U.S. at 496. The Government, moreover, does not assert that Plaintiffs' other claim—that USCIS and DHS have unreasonably delayed placing the principal petitioners on the U-visa waitlist—is moot. To sum up: neither of Plaintiffs' claims is moot.

To the extent that Plaintiffs contest USCIS's or DHS's failure to institute a program to process prewaitlist work-authorization applications, this issue is likewise not moot. Two exceptions to mootness are relevant here. First, "[v]oluntary cessation of challenged conduct moots a case . . . [but] only if it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). Second, wrongs that are "capable of repetition, yet evading review" are not moot. *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). "Th[is] exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595–96 (6th Cir. 2014) (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)).

The nascent BFD process may be "the most significant update to the U visa program since the [U-visa] regulations were promulgated [by DHS] in 2007." Gov't Letter Br. at 8. But USCIS clearly wields sole and unadulterated discretion to set forth, abide by, and eliminate the BFD process. The "about" section of the USCIS Policy Manual states that "[t]he Policy Manual is to be followed by all USCIS officers in the performance of their duties but it does not remove their discretion in making adjudicatory decisions." POLICY MANUAL, *supra*, ABOUT THE POLICY MANUAL, https://www.uscis.gov/policy-manual (last visited July 27, 2021). The BFD process's appendix states that the APA "excepts interpretive rules; general statements of policy; and rules of agency organization, procedure, or practice from notice and comment requirements" and that "[t]he permissive language of [8 U.S.C. § 1184(p)(6)] does not require the agency to create a separate employment authorization process." POLICY MANUAL, *supra*, Vol. 3, Part C, Ch. 5, APPENDIX: BONA FIDE DETERMINATION PROCESS AND ADMINISTRATIVE PROCEDURE ACT CONSIDERATIONS [hereinafter APA APPENDIX] §§ A., B.

Put simply, USCIS's own manual betrays the agency's stance on mootness. Clearly, USCIS does not believe that statutes compel the promulgation of the BFD process (or any other content in the Policy Manual for that matter). A future administration could rescind the BFD process just as easily as this administration established it; the program could be retracted before any of Plaintiffs' applications are adjudicated by USCIS. We conclude that the Government's recent release of the BFD process does not satisfy the "voluntary cessation" framework and that Plaintiffs' injuries are capable of repetition yet evading review. The implementation of the BFD process thus does not moot any part of this case.

**D. Reviewability**

We now turn to the APA. Title 5 U.S.C. § 702 allows persons to challenge agencies' actions. *See Norton*, 542 U.S. at 61–62. That section "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967) (quoting § 702). Courts can review only final agency actions under 5 U.S.C. § 704. *See Norton*, 542 U.S. at 61–62.[3] "Agency action" is defined to include agencies' "failure to act." 5 U.S.C. § 551(13).

Section 702's premise of judicial review is circumscribed by two other sections of the APA. Section 701 ordains whether judicial review is available at all. *See Webster v. Doe*, 486 U.S. 592, 597 (1988). "[The] strong presumption favoring judicial review of administrative action . . . may be rebutted only if the relevant statute precludes review" per § 701(a)(1), or if the action is "committed to agency discretion by law" per § 701(a)(2). *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, — U.S. —, 139 S. Ct. 361, 370 (2018) (citations omitted); *see* § 701(a)(1), (a)(2). Section 706 cabins the scope of judicial review. *See Webster*, 486 U.S. at 597. Relevant here is 5 U.S.C. § 706(1), which provides that the federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed."

---

[3]The parties have not briefed whether the BFD process is final. The Government has already implemented the BFD process and is applying its procedures to all pending U-visa applications. *See* POLICY ALERT, *supra*, at 2. Because the BFD process is found in the Policy Manual, it is not subject to notice-and-comment requirements. *See* 5 U.S.C. § 553(b)(A). To that end, we assume that the release of the BFD process is a final agency action per § 704.

Thus, we first explore whether § 701(a)(1) and § 701(a)(2) prevent us from reviewing Plaintiffs' allegations that USCIS and DHS have unreasonably delayed the placement of the principal petitioners on the U-visa waitlist (waitlist claim) and the adjudication of Plaintiffs' work-authorization applications (work-authorization claim). We then examine whether § 706(1) constricts our review.

**1.  Availability of Judicial Review**

**a.  5 U.S.C. § 701(a)(1) and 8 U.S.C. § 1252(a)(2)(B)(ii)**

Under § 701(a)(1), the federal courts cannot review an agency action when "statutes preclude judicial review." Whether a statute prevents judicial review turns on Congress's clear and convincing intent. *See Abbott Lab'ys*, 387 U.S. at 141; *Chaney*, 470 U.S. at 830. "When a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Kucana v. Holder*, 558 U.S. 233, 251 (2010) (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)).

The Government argues that 8 U.S.C. § 1252(a)(2)(B)(ii) thwarts judicial review of Plaintiffs' waitlist and work-authorization claims via § 701(a)(1) and as an independent jurisdiction-stripping statute. *See* Gov't Br. at 17. These bipartite arguments rely on identical analyses, so we address these twin contentions together.

Section 1252 governs "Judicial review of orders of removal" and subsection (a) is titled "Matters not subject to judicial review." Clause (a)(2)(B) states:

(B)  Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and *regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review*—

     (i)  any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

     (ii)  any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this*

> subchapter to be in the discretion of the Attorney General or the
> *Secretary of Homeland Security*, other than the granting of relief
> under section 1158(a) of this title.

§ 1252(a)(2)(B) (emphases added).

We begin with why § 1252(a)(2)(B)(ii) does not block our review of Plaintiffs' claim that the DHS Secretary has unreasonably delayed the principal petitioners' placement on the U-visa waitlist. The Supreme Court has held that § 1252(a)(2)(B)(ii) does not bar judicial review of decisions that are specified as discretionary by regulation. *Kucana*, 558 U.S. at 237. Congress ordered DHS to implement regulations for the U-visa program. *See* 8 U.S.C. § 1101(a)(15)(U). DHS did implement regulations. *See* 8 C.F.R. § 214.14. In those regulations, DHS spawned the waitlist process and impelled itself to place on the waitlist principal applicants who would be eligible for U-visas without the 10,000-person statutory cap. *See id.* § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status *must* be placed on a waiting list . . . ." (emphasis added)). DHS's regulations coexist with the BFD process. Remember, U-visa applicants can be funneled into either the BFD EAD track or the waitlist track—the tracks are separate. Per DHS's regulations, principal petitioners who would be eligible for U-visas but for the 10,000-person cap must still be placed on the waitlist, notwithstanding the existence of the BFD process. In short, waitlist adjudications are nondiscretionary per DHS regulations. Because no *statute* prohibits judicial review, § 701(a)(1) does not bar review of the Plaintiffs' waitlist claim. *See Gonzalez*, 985 F.3d at 374 n.10.

Whether § 1252(a)(2)(B)(ii) prevents us from reviewing Plaintiffs' argument that DHS has unreasonably delayed adjudication of their prewaitlist work-authorization applications presents a closer question. Why? Unlike DHS's mandatory placement of U-visa eligible principal petitioners on the waitlist, which is found in DHS's own regulations, a *statute* supplies DHS's power to grant work authorization to persons associated with pending U-visa applications. That statute is 8 U.S.C. § 1184(p)(6), which states that "[t]he [DHS] Secretary may grant work authorization to any [noncitizen] who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title."

We hold that § 1252(a)(2)(B)(ii) does not bar judicial review of Plaintiffs' work-authorization claims for two reasons.   First, in *Kucana*, the Court determined that § 1252(a)(2)(B)(ii) bars judicial review of decisions that were made "discretionary by legislation." *Kucana*, 558 U.S. at 247.  Section 1252(a)(2)(B)(ii), however, does *not* halt judicial review of "decisions specified as discretionary by regulation."  *Id.* at 248.  We observe that the BFD process is not found in a regulation or a statute.  But an agency's manual can carry some legal force, *see Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998), and the BFD process is a nonstatutory statement of USCIS's discretion to grant work authorization to persons associated with pending U-visa applications.   So even if § 1252(a)(2)(B)(ii) "includes" § 1184(p)(6), the former provision certainly does not "include" the nonstatutory BFD process.

Plaintiffs, moreover, triumph regardless of the BFD process's existence because § 1184(p)(6) does not unambiguously "specif[y]" for § 1252(a)(2)(B)(ii) purposes that DHS maintains discretion over issuing work authorizations.   The Government overstates the significance of § 1184(p)(6)'s use of the word "may."  The Court's decision in *Weyerhaeuser* is instructive.   In that case, the Court considered whether the federal courts could review the Secretary of the Interior's decision not to exclude an area from critical habitat because of the economic impact of such a designation under § 4(b)(2) of the Endangered Species Act (ESA). *See Weyerhaeuser*, 139 S. Ct. at 369.  Section 4(b)(2) states that the Secretary of the Interior "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area . . . ."  *Id.* at 371 (quoting 16 U.S.C. § 1533(b)). Conceding that "[t]he use of the word 'may' certainly confers discretion on the Secretary," *id.*, the Court did not stop at "may."  To the Court, "[§] 4(b)(2) requires the Secretary to consider economic impact and relative benefits *before* deciding whether to exclude an area from critical habitat or to proceed with designation."  *Id.* at 371 (emphasis added).

Section 1184(p)(6) is analogous to ESA § 4(b)(2).  Again, § 1184(p)(6) states that "[t]he [DHS] Secretary *may grant work authorization* to any [noncitizen] who has a *pending*, *bona fide* application for nonimmigrant status under section 1101(a)(15)(U) of this title."  8 U.S.C. § 1184(p)(6) (emphases added).  We treat § 1184(p)(6) as the Court handled ESA § 4(b)(2): we

read this statute as requiring the DHS Secretary to decide if an application is "pending" and "bona fide" *before* the agency can wield its discretion to grant an applicant work authorization.

We acknowledge that § 1184(p)(6) might be read another way. To the Fourth Circuit, "[t]he term 'pending, bona fide application' merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication." *Gonzalez*, 985 F.3d at 371. Put another way, the Fourth Circuit reads § 1184(p)(6) front to back—i.e., USCIS may exercise its discretion to adjudicate a prewaitlist work-authorization application and then determine whether a U-visa application is pending and bona fide as a prerequisite to granting work authorization—whereas we read § 1184(p)(6) back to front—i.e., USCIS must determine whether a U-visa application is pending and bona fide before the agency "may" grant work authorization to the petitioner.

The issuance of the BFD process bolsters our *Weyerhaeuser*-style, back-to-front construction of § 1184(p)(6). Here, the USCIS Policy Manual states—

> USCIS *first determines* whether a pending petition is bona fide. *Second*, USCIS, *in its discretion*, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants a noncitizen a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that noncitizen deferred action for the period of the BFD EAD.

POLICY MANUAL, *supra*, Introduction; *see also* POLICY ALERT, *supra*, at 2 ("[The BFD Process] [c]larifies that, *if* USCIS determines the principal petition is *bona fide*, USCIS *will then* determine whether the principal petitioner poses a risk to national security or public safety, and finally, whether the principal petitioner warrants a favorable exercise of discretion to receive *employment authorization* under [§ 1184](p)(6) and deferred action." (emphases added) (footnote omitted)); FLOWCHART, *supra* (listing "is the U nonimmigrant status petition bona fide?" as first step and "*May* USCIS issue a Bona Fide Determination (BFD) Employment Authorization Document (EAD) and Deferred Action?" as second step (emphasis added)).

Clearly, USCIS and we are on the same page: § 1184(p)(6) is properly read back to front à la *Weyerhaeuser*. USCIS must decide whether a principal petitioner's U-visa application is

"bona fide" before the agency undertakes discretionary decisions about national security, public safety, and other relevant factors and before USCIS makes more discretionary decisions to issue a BFD EAD and grant deferred-action status. *See* BFD PROCESS, *supra*, Introduction & § B.**4**  In other words, Section 1184(p)(6) is not a wholly discretionary statute.  We thus do not read § 1184(p)(6) as "specifying" discretion for § 1252(a)(2)(B)(ii) purposes.

To sum up, USCIS's placement of principal petitioners who are eligible for U-visas on the waitlist is mandatory per DHS regulations, not pursuant to a statute.  So 5 U.S.C. § 701(a)(1) does not bar review of Plaintiffs' waitlist claim.  As for Plaintiffs' assertion that USCIS has unreasonably delayed adjudicating their work-authorization applications, 8 U.S.C. § 1252(a)(2)(B)(ii) applies only when a statute accords discretion; the BFD process is found in a manual, not a statute.  Even without the BFD process, we could still review Plaintiffs' claims because § 1184(p)(6) is a semi-mandatory statute that does not unambiguously "specif[y]" for § 1252(a)(2)(B)(ii) purposes that DHS maintains discretion over issuing work authorizations. Under our and USCIS's identical constructions of § 1184(p)(6), USCIS must decide whether a U-visa application is bona fide before exercising its discretion to grant work authorization. Because § 1184(p)(6) supplies only partly discretionary power to DHS, the statute is ambiguous enough to sustain the APA's presumption of judicial review.  Thus, 5 U.S.C. § 701(a)(1) and 8 U.S.C. 1252(a)(2)(B)(ii) do not eliminate judicial review of Plaintiffs' work-authorization claims.**5**

---

**4**We reiterate that the Fourth Circuit announced in *Gonzalez* its interpretation of § 1184(p)(6) before the issuance of the BFD process.  We do not know if the Fourth Circuit might now defer to USCIS's articulation of § 1184(p)(6) in the BFD process.

**5**We note an unusual rift between DHS regulations and the Policy Manual that does not affect the outcome of this case.  The Policy Manual provides that USCIS must decide whether a U-visa application is "bona fide."  If yes, USCIS follows the BFD EAD track.  If no, USCIS follows the waitlist track.  DHS regulations, however, still state that principal petitioners who would be eligible for U-visas without the 10,000-person statutory cap must be put on the waitlist.  8 C.F.R. § 214.14(d)(2).  But if that person's application is "bona fide," USCIS places them on the BFD EAD track per the Policy Manual.  The problem?  The Policy Manual states that the tracks are separate—a person cannot both be issued an BFD EAD and be put on the waitlist.  *See* BFD PROCESS, *supra*, § C.; FLOWCHART, *supra*.  So what does USCIS do when a person's application is bona fide *and* the person would be eligible for a U-visa but-for the 10,000-person cap?  Nevertheless, this apparent tension between the regulations and the manual does not affect whether the federal courts may review Plaintiffs' claims under § 701 or the scope of that review under § 706.  It is up to USCIS to iron out this wrinkle.

### b.  5 U.S.C. § 701(a)(2)

Section 701(a)(2) "has caused confusion and controversy since its inception."  Viktoria Lovei, *Revealing the True Definition of APA § 701(a)(2) by Reconciling "No Law to Apply" with the Nondelegation Doctrine*, 73 U. CHI. L. REV. 1047, 1050 (2006).  That provision states that an "agency action [that] is committed to agency discretion by law" is unreviewable.  *Regents*, 140 S. Ct. at 1905 (quoting § 701(a)(2)).  Taken literally, § 701(a)(2) conveys that the federal courts can never review any agency exercise of discretion.  *See Chaney*, 470 U.S. at 829.  This formalistic interpretation directly conflicts with another APA section, § 706(a)(2)(A), which requires courts to set aside agency actions that are "arbitrary, capricious, *an abuse of discretion*, or otherwise not in accordance with law," 5 U.S.C. § 706(a)(2)(A) (emphasis added), and thus explicitly contemplates judicial review for some discretionary agency actions, *see Chaney*, 470 U.S. at 829.

The Supreme Court has thus rejected a literal reading of § 701(a)(2).  Instead, the Court has clarified that § 701(a)(2) "is a very narrow exception . . . [and] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'"  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citations and footnote omitted).  "[E]ven where Congress has not affirmatively precluded review"—i.e., per § 701(a)(1)—"review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Chaney*, 470 U.S. at 830.

We start with why § 701(a)(2) does not bar us from reviewing Plaintiffs' claim that DHS has unreasonably delayed processing their U-visa applications.  As explained above, *see supra* § II.D.1.a., DHS's own regulations state that placing principal petitioners who are eligible for U-visas on the waitlist is nondiscretionary.  *See* 8 C.F.R. § 214.14(d)(2).  Because there is no "agency action [that] is committed to agency *discretion* by law," § 701(a)(2) (emphasis added), we may review Plaintiffs' waitlist-placement claim.

Unsurprisingly, whether § 701(a)(2) prohibits us from reviewing Plaintiffs' claim that DHS has unreasonably delayed their work-authorization applications presents a far closer

question.  At issue, once again, is 8 U.S.C. § 1184(p)(6).  Plaintiffs contend that § 1184(p)(6)'s use of "pending" and "bona fide" supply meaningful standards that the courts can use to judge an agency's discretionary action.  *See* Barrios Garcia Br. at 19–20.  The Government counters that § 1184(p)(6) "does not define what constitutes a 'bona fide' application and does not require USCIS to use any particular evaluation process to determine whether an application is bona fide."  Gov't Br. at 23.  The Government also criticizes Plaintiffs for playing ambiguity both ways.  As explained above, *supra* § II.D.1.a, Plaintiffs urge that § 1184(p)(6)'s use of "may" is ambiguous enough that the statute does not eliminate judicial review via 8 U.S.C. § 1252(a)(2)(B)(ii) and 5 U.S.C. § 701(a)(1).  So, the Government takes issue with the Plaintiffs' argument that that § 701(a)(2) allows us to consider the work-authorization claim because § 1184(p)(6) supplies meaningful standards of review.  *See* Gov't Br. at 22–23 ("It is difficult to conceive of a situation where the same statute can be ambiguous when analyzed with respect to one statute dealing with discretion, 8 U.S.C. § 1252(a)(2)(B)(ii), and unambiguous as to another, 5 U.S.C. § 701(a)(2)").

The Government mistakenly blurs the line between § 701(a)(1) and § 701(a)(2) and misleadingly obscures Plaintiffs' logically coherent contentions.  Plaintiffs are not arguing that the entire § 1184(p)(6) is simultaneously ambiguous and unambiguous.  Rather, Plaintiffs are assessing the nebulousness of two different slices of § 1184(p)(6); they argue that "may" is murky but that "pending" and "bona fide" are intelligible.  We deem it perfectly logical for Plaintiffs to argue that § 1184(p)(6)'s use of "may" renders ambiguous whether § 1252(a)(2)(B)(ii) "precludes review" under § 701(a)(1) while maintaining that § 1184(p)(6)'s use of "pending" and "bona fide" supply meaningful standards that courts can wield to review discretionary agency actions under § 701(a)(2).

To cut through the parties' back-and-forth, the relevant question here is whether "no judicially manageable standards are available for judging how and when [the DHS Secretary] should exercise its discretion" to issue work authorizations to Plaintiffs.  *Chaney*, 470 U.S. at 830.  We conclude that § 1184(p)(6)'s use of "pending" and "bona fide" supply such judicially manageable standards, and our reading is reinforced by the BFD process.

The Court's § 701(a)(2) precedent is illustrative.  In *Overton Park*, for example, the Court considered a section of two identical statutes that barred use of public parkland for highways unless "no feasible and prudent alternative" exists.  *Overton Park*, 401 U.S. at 411 (citations omitted).  Pointing to the words "feasible" and "prudent," *see id.* at 411–12, the Court concluded:  "Plainly, there is 'law to apply' and thus the exemption for action 'committed to agency discretion' [in § 701(a)(2)] is inapplicable," *id.* at 413.  The Court reached a similar conclusion in *Weyerhaeuser*.  To refresh, the Court parsed ESA § 4(b)(2), which states that "[t]he Secretary [of the Interior] may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area."  *Weyerhaeuser*, 139 S. Ct. at 371.  By "requir[ing] the Secretary to consider economic impact and relative benefits before deciding whether to exclude an area from critical habitat or to proceed with designation," the Court explained, ESA § 4(b)(2) supplied meaningful standards to review the Secretary of Interior's exercise of his discretion not to exclude an area from critical habitat.  *Id.* at 371–72.

The Court came out another way in *Chaney*.  The *Chaney* Court examined whether incarcerated persons could compel the Food and Drug Administration (FDA) to take enforcement actions to prevent two states from using specific lethal-injection drugs in violation of the Federal Food, Drug, and Cosmetic Act (FDCA).  *Chaney*, 470 U.S. at 823–24.  The Court looked at the FDCA's enforcement provision, which "provides only that '[t]he [FDA] Secretary is *authorized* to conduct examinations and investigations . . . .'"  *Id.* at 835 (quoting 21 U.S.C. § 372) (first, last alterations in original).  The Court concluded that the enforcement provision "charges the [FDA] Secretary only with recommending prosecution; any criminal prosecutions must be instituted by the Attorney General.  The Act's enforcement provisions thus commit complete discretion to the [FDA] Secretary to decide how and when they should be exercised."  *Id.*

Section 1184(p)(6) is akin to the statutes in *Overton Park* and *Weyerhaeuser* and distinguishable from the statute in *Chaney*.  The FDCA enforcement provision in *Chaney* provided only that the [FDA] secretary was "authorized" to conduct examinations and investigation without supplying any standards that governed the timing or nature of these

investigations. Imagine if § 1184(p)(6) read "the DHS Secretary may grant work authorization to noncitizens." This hypothetical provision would be as standardless as the FDCA's enforcement provision. But that is not what § 1184(p)(6) states; the provision at issue in this case includes the words "pending" and "bona fide." To us, "pending" and "bona fide" are akin to "feasible" and "prudent" (à la *Overton Park*) and "benefits" (per *Weyerhaeuser*). All are meaningful standards that steer judicial review of discretionary agency decisions.

DHS regulations, moreover, charge "pending" with meaning. One DHS regulation, 8 C.F.R. § 103.2(a), lists filing procedures for benefit requests, such as work authorizations. Another, 8 C.F.R. § 214.4(c)(2), outlines the "initial evidence" that noncitizens must attach to their U-visa application. Taken together, these two regulations can be used to assess whether an application is "pending."

"Bona fide" is a similarly significant, well-understood term of art in the law. *See Bona Fide*, *Bona Fides*, *Mala Fide*, BLACK'S LAW DICTIONARY (11th ed. 2019). For example, 8 U.S.C. § 1255(e) governs the "bona fide marriage exception" to our immigration laws' "[r]estriction on adjustment of status based on marriages entered while in admissibility or deportation proceedings." That provision describes "bona fide"—

> [the restriction] shall not apply with respect to a marriage if the [noncitizen] establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the [noncitizen's] admission as an immigrant and no fee or other consideration was given.

*Id.* § 1255(e)(3). "Bona fide" carries a similar connotation in contract, property, bankruptcy, consumer-protection, intellectual-property, and employment-discrimination law. *See Bona Fide Contract*, *Bona Fide Creditor*, *Bona Fide Error*, *Bona Fide Holder for Value*, *Bona Fide Intent to Use*, *Bona Fide Judgment Creditor*, *Bona Fide Occupational Qualification*, *Bona Fide Operation*, *Bona Fide Perceptio Et Consumptio*, *Bona Fide Possession*, *Bona Fide Purchaser*, *Bona Fide Sale*, BLACK'S LAW DICTIONARY (11th ed. 2019). Clearly, "bona fide" is a thoroughly examined term of art laden with articulable standards—clear and convincing

evidence of good faith, compliance with the law, and sincere purpose—that courts can apply to discretionary agency decisions.

Any doubt about the meaningfulness of "bona fide" collapsed when USCIS issued the BFD process. Per the USCIS Policy Manual, "[b]ona fide generally means 'made in good faith; without fraud or deceit.'" *See* BFD PROCESS, *supra*, Introduction & n.3 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)). The manual supplies pages of guidance, appendices, and even a flowchart explaining what "bona fide" means, how the agency came up with that term, and definitions of bona fide that were considered and rejected. *See id.* § A.; FLOWCHART, *supra*; APA APPENDIX, *supra*.

Indeed, USCIS's issuance of the BFD process puts this case on all fours with the Court's recent decision in *Regents*. In 2012, DHS issued a memorandum announcing the Deferred Action for Childhood Arrivals (DACA) program. *See Regents*, 140 S. Ct. at 1901. To prevent low-priority persons from being removed, the DACA memorandum instructed USCIS to "exercise prosecutorial discretion[] on an individual basis" and defer action for those individuals. *Id.* at 1902 (citation omitted, alteration in original). DHS later rescinded DACA via memorandum; the rescission was at issue in *Regents*. *See id.* at 1902–05.

In *Regents*, the Government argued that rescinding DACA was a nonenforcement decision that could not be reviewed because of § 701(a)(2). *See id.* at 1905–06. The Court disagreed, distinguishing DACA's nonenforcement procedures from the FDA's inaction in *Chaney*. *Chaney*, the Court explained, was an "individual non-enforcement decision." *Id.* at 1906. DACA, on the other hand, "is not simply a non-enforcement policy." *Id.* The Court thus concluded that § 701(a)(2) does not prevent the federal courts from reviewing DACA's rescission. *See id.* at 1907.

In this case before us, the Government insists that *Regents* is "not pertinent to any issue in this case." Gov't Letter Br. at 12. "The [*Regents*] Court," the Government contends, "found jurisdiction existed because the Government *acted* to implement a new policy, such that the rescission of that policy implicated reliance interests and warranted judicial review. Here, however, [Plaintiffs] have alleged that USCIS has *refused to act* to implement a benefits

program."**6**  *Id.* at 14 (citation omitted).   But the Government misrepresents *Regents*.   The *Regents* Court did not hinge its analysis of § 701(a)(2) on USCIS's "*act*[*ing*] to implement a new policy" by *rescinding* DACA.  *Id.*  Rather, the Court looked at the *creation* of DACA in deciding that § 701(a)(2) permitted judicial review of DACA's rescission.  *See Regents*, 140 S. Ct. at 1906.

The DACA memorandum, moreover, mirrors the BFD process in the present case.  Like the DACA memorandum, the USCIS Policy Manual does not merely "'refus[e] to institute proceedings' against a particular entity or even a particular class."  *Id.* (alteration in original) (quoting *Chaney*, 470 U.S. at 832).  Rather, the USCIS manual has "instituted a standardized review process" and "'establish[ed] a clear and efficient process' for identifying individuals who met the enumerated criteria" for what constitutes a bona fide U-visa application and who is eligible for a BFD EAD.  *Id.* (citation omitted).  USCIS also issued a "formal notice[]" of this policy change on June 14, 2021.  *See id.*; POLICY ALERT, *supra*, at 1.  And after USCIS determines that a U-visa application is bona fide, decides that a petitioner poses no risk to public safety or national security, and considers "other relevant discretionary factors," USCIS can decide whether to issue work authorization.  *See* BFD PROCESS, *supra*, § B.  This chain of decisions embodies "an affirmative act of approval"—"the very opposite of a 'refus[al] to act.'" *Regents*, 140 S. Ct. at 1906 (alteration in original) (quoting *Chaney*, 470 U.S. at 831–32).  The BFD process is no "passive non-enforcement policy"; it has "created a program for conferring affirmative immigration relief."  *Id.*  Finally, "access to [work-authorization] benefits is an interest [that] 'courts often are called upon to protect.'"  *Id.* (quoting *Chaney*, 470 U.S. at 832); *see, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 21–22 (2003) (reviewing agency's Social Security eligibility determination).  No doubt, the genesis of the BFD process is "an 'action [that] provides a focus for judicial review.'"  *Regents*, 140 S. Ct. at 1906 (alteration in original) (quoting *Chaney*, 470 U.S. at 832).

---

**6**Again, we observe that Plaintiffs do not focus on the absence of a BFD process.  Plaintiffs complain that USCIS and DHS have unreasonably delayed the adjudication of their work-authorization applications.

The Government also attempts to distinguish the *Regents* Plaintiffs (who argued that the rescission of DACA was arbitrary and capricious and must be set aside per § 706(2)(A)), *see id.* at 1905, from Plaintiffs in this case (who ask us to compel an unlawfully withheld or unreasonably delayed adjudication of their work-authorization applications under § 706(1)). This divergence is inapposite. Whether the Government can compel an agency that has failed to act under § 706(1) involves a wholly separate analysis from whether a statute supplies no meaningful standard to assess an agency's exercise of discretion per § 701(a)(2). *See Chaney*, 470 U.S. at 828–35. Even if the *Regents* Court's determination that USCIS arbitrarily or capriciously rescinded DACA is extraneous here, *Regents*'s discussion of § 701(a)(2) is apropos the present case.

To sum up, the placement of principal petitioners on the waitlist is not discretionary under DHS regulations. Section 1184(p)(6) and the USCIS Policy Manual, moreover, supply *some* law that we can apply to assess USCIS's determination of whether a U-visa application is "pending" and "bona fide," which triggers either the BFD EAD track or the waitlist track. Thus, § 701(a)(2) does not bar the federal courts from reviewing either of Plaintiffs' claims.**[7]** Having decided that § 701 does not block us from reviewing either of Plaintiffs' claims, we now determine the scope of our review under § 706.

## 2. Scope of Judicial Review:  5 U.S.C. § 706(1)

Persons can challenge an agency's *action* under 5 U.S.C. § 706(2). Under § 706(2)(A), courts can set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* Persons may challenge an agency's *failure to act*, on the other hand, under § 706(1). Per that provision, a federal court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." § 706(1). Plaintiffs do not challenge the

---

**[7]**In *Gonzalez*, the Fourth Circuit cited the standards for §§ 701(a)(1), 701(a)(2), and 706(1). But the *Gonzalez* court's decision that the courts lack "jurisdiction" to hear the work-authorization claims technically hinged on § 706(1) alone. *See Gonzalez*, 985 F.3d at 365–71 & n.4. So the Fourth Circuit's reasoning does not impact our analysis of whether the federal courts may review Plaintiffs' prewaitlist work-authorization claims under § 701(a)(1) and (a)(2). We find *Gonzalez*'s reasoning persuasive regarding only our determination of whether we may compel DHS to adjudicate Plaintiffs' work-authorization applications pursuant to § 706(1). And, as we explain below, *see infra* § II.D.2, we conclude that we cannot command DHS to decide whether to issue prewaitlist work authorizations to Plaintiffs under § 706(1).

BFD process as arbitrary or capricious; they challenge USCIS's failure to decide whether the principal petitioners should be placed on the waitlist and to adjudicate Plaintiffs' work-authorization applications. So § 706(1) supplies the appropriate framework in the present case. Section 706(1) turns on discretion. *See Norton*, 542 U.S. at 63–64. A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64.

We start with Plaintiffs' claim that USCIS has unreasonably delayed putting the principal petitioners on the waitlist. "[A]n agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018). DHS has done so here. Again, USCIS's regulations mandate the placement of U-visa-eligible petitioners on the waitlist. *See* 8 C.F.R. § 214.14(d)(2). So the federal courts may determine whether USCIS unlawfully withheld or unreasonably delayed the placement of the principal petitioners on the U-visa waitlist under § 706(1).

Whether § 706 forestalls us from considering Plaintiffs' claim that USCIS has unreasonably delayed adjudicating their work-authorization claims merits a more elaborate answer. USCIS's determination of whether a U-visa application is "bona fide" is mandatory per our construction of § 1184(p)(6) and the BFD process's kindred interpretation of that provision. *See supra* § II.D.1.b; *see also Aragon*, 146 F.3d at 824 (explaining that if an agency intends a manual to be mandatory, the manual can carry the force of law, but if the agency intends for a manual to be nonmandatory, guidance, or advisory, the manual has no legal effect). Section 1184(p)(6)'s use of "may" and the BFD process, however, render discretionary the decision to issue work authorizations to prewaitlist U-visa applicants. To that end, we may review an unreasonably delayed determination of whether a principal U-visa application is "bona fide," but we cannot review DHS's refusal to adjudicate prewaitlist applicants' work-authorization applications.

To recap, we may (1) compel DHS to put principal petitioners on the U-visa waitlist if placement has been unreasonably delayed; and (2) require DHS to adjudicate whether a U-visa

application is bona fide if that decision is unreasonably delayed. But we cannot command DHS to adjudicate Plaintiffs' prewaitlist work-authorization applications.[8]

**E.  Unreasonable Delay**

Having determined that we may review Plaintiffs' claims, we now assess whether Plaintiffs have stated claims upon which relief can be granted. The federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." § 706(1); *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). "A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375; *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). When resolving whether an agency action has been unreasonably delayed, the federal courts consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)—

(1)  the time agencies take to make decisions must be governed by a rule of reason;

(2)  where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)  delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[8]The Fourth Circuit in *Gonzalez* concluded that the federal courts do not have "jurisdiction" under § 706(1) to review USCIS's failure to adjudicate prewaitlist work-authorization applications. *See Gonzalez*, 985 F.3d at 361–62. We are not certain that the Fourth Circuit would reach the same conclusion now that the BFD policies have been issued. In determining that it had no "jurisdiction" under § 706(1), *Gonzalez* emphasized that "there are no regulations or defined procedures, much less longstanding ones, for evaluating pre-waiting-list work authorizations." *Id.* at 370. Now that the BFD process is in place, there *are* defined procedures for evaluating prewaitlist work authorizations. The Fourth Circuit also concluded that the terms "pending" and "bona fide" used in § 1184(p)(6) are broad, unreviewable standards. For the reasons stated in this section, we disagree. *See id.* at 370–71. We emphasize that the BFD process now supplies lengthy detail about the meaning of "bona fide." To the extent that "bona fide" may have meant nothing when the Fourth Circuit issued *Gonzalez*, that term certainly means something now.

(4)  the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)  the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)  the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal quotation marks and citations omitted).

The third and fifth *TRAC* factors—concerning health, welfare, and prejudice—favor Plaintiffs.  Per their complaints, Plaintiffs cannot obtain a social-security number or identification cards; they cannot garner healthcare, car insurance, or lawful employment. Plaintiffs cannot acquire deferred action or permanent status; they risk removal from the United States.  They cannot lawfully travel to and from the United States, so they cannot reunite with their family that lives abroad.  *See* Barrios Garcia R. 22 (First Am. Compl. at 6–8, 11, 15, 17) (Page ID #146–48, 151, 155, 157); Arguijo R. 28 (Second Am. Compl. at 6–7, 11, 15, 17) (Page ID #202–03, 207, 211, 213); Mendez Mendez R. 20 (First Am. Compl. at 6–8, 11–12, 15, 17–18) (Page ID #115–16, 120–21, 124, 126–27); Patel R. 1 (Compl. at 4, 8, 11, 16) (Page ID #4, 8, 11, 16).  No doubt, each Plaintiff has pleaded "sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by" principal petitioners' years-long wait to be placed on the U-visa waitlist.  *Gonzalez*, 985 F.3d at 375.

Based on these factual allegations alone, we hold that all Plaintiffs have sufficiently alleged that USCIS has unreasonably delayed deciding whether to place principal petitioners on the U-visa waitlist.  Our decision is compounded by the applicants' lengthy wait.  Barrios Garcia, Arguijo, and the Mendez Mendezes filed their U-visa applications in 2018.  Patel and her family members filed their U-visa applications in 2016—five years ago.  *See* Barrios Garcia R. 22 (First Am. Compl. at 10) (Page ID #146–47, 151); Arguijo R. 28 (Second Am. Compl. at 11) (Page ID #207); Mendez Mendez R. 20 (First Am. Compl. at 11–12) (Page ID #120–21); Patel R. 1 (Compl. at 4, 8, 11) (Page ID #4, 8, 11).

As for Plaintiffs' work-authorization claim, we reiterate that we cannot compel USCIS to adjudicate prewaitlist work-authorization applicants notwithstanding any unreasonable delay. But we note that the BFD process was implemented as this appeal unfolded; Plaintiffs may

desire to challenge USCIS's delay in determining whether their U-visa applications are bona fide. We thus deem it appropriate for the district court to allow Plaintiffs to amend their complaints to reflect the issuance of this new program. *See* FED. R. CIV. P. 15(a)(2).

Regarding Plaintiffs' waitlist claim, the Government's squabbles about the remaining *TRAC* factors fail to convince us. Adverting to the first *TRAC* factor, the Government declares that USCIS processes U-visa petitions and related EAD requests "on a first-in, first-out basis, with some eligible to be expedited under specific criteria" and thus constitutes a rule of reason. Gov't Br. at 40–41. In essence, the Government portrays the U-visa approval process as a languid line, which coheres with DHS regulations. 8 U.S.C. § 214.14(d)(2) ("Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority."). At oral argument, the Government also contended that Plaintiffs have supplied no evidence that the U-visa-adjudication process is not governed by a rule of reason and that the mere passage of time alone cannot sustain a claim of unreasonable delay. Oral Arg. at 49:04–47.

The Government's analysis of the first *TRAC* factor fails on several grounds. For one, Plaintiffs have adequately alleged that no rule of reason governs the U-visa-adjudication process. Per Plaintiffs' complaints, many U-visa applications were filed after but decided before theirs, which "reflects a breakdown of any rule of reason that USCIS purports to follow in deciding when applications are reviewed and placed on the waitlist"; "USCIS does not make U-status waiting list decisions on a first in, first out basis"; "USCIS systematically prioritizes later filed petitions over earlier filed petitions for U-status waiting list decisions"; "[t]here is no cap for the U-status waiting list"; and that "there are later-filed applications that get U-status waiting list decisions ahead of earlier filed applications." Barrios Garcia R. 22 (First Am. Compl. at 10, 16) (Page ID #150, 156); Arguijo R. 28 (Second Am. Compl. at 10, 16) (Page ID #206, 212); Mendez Mendez R. 20 (First Am. Compl. at 11, 16) (Page ID #120, 125); *see also* Patel R. 1 (Compl. at 13) (Page ID #13). Nor should Plaintiffs' lack of evidence terminate their suits at the motion-to-dismiss stage. At this point, the machinery of the U-visa and prewaitlist-work-authorization adjudication processes is known only to USCIS. Clearly, discovery is critical to understanding whether the U-visa process is a systematic line or not. And the Government has

not supplied—nor can we find—any binding or persuasive caselaw that stands for the proposition that the mere passage of time cannot sustain a claim of unreasonable delay. On the contrary, we can easily envisage an extraordinary length of time that would be unreasonable on its face; waiting a century to hear back about your U-visa application, for example, is patently unreasonable. We thus refuse to adopt the Government's radical rule in the case before us.

Homing in on the second *TRAC* factor, the Government protests that "Congress has not set a specific timeline for adjudicating U visa petitions and related EAD requests." Gov't Br. at 42. At oral argument, the Government intimated that if a statute does not set a deadline for an agency action, an agency's failure to act is not unreasonably delayed for § 706(1) purposes. Oral Arg. at 31:06–32:23. But the Government has overlooked the *TRAC* factor in the room: when no statute sets a deadline for an agency action, the second *TRAC* factor is not relevant to an "unreasonably delayed" analysis. *TRAC*, 750 F.2d at 80 ("(2) *where* Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme *may* supply content for this rule of reason" (emphases added)).

The Government's position, moreover, cannot withstand the words of Congress and the Supreme Court. Section 706(1) commands the federal courts to "compel agency action unlawfully withheld *or* unreasonably delayed." "[T]he distinction between agency action 'unlawfully withheld' and 'unreasonably delayed' turns on whether Congress imposed a date-certain deadline on agency action." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999).[9] By asking us to import a deadline-based "unlawfully withheld" determination to our "unreasonably delayed" analysis, the Government demands that we erase the words "unreasonably delayed" from § 706(1). This we cannot do. The Supreme Court has been clear: "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a

---

[9]"[W]hen an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable. However, when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it witholds such timely action, a reviewing court must compel the action unlawfully withheld. To hold otherwise would be an affront to our tradition of legislative supremacy and constitutionally separated powers." *Forest Guardians*, 174 F.3d at 1190.

*discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64. That's it. The violation of a statutory deadline is not required to succeed on a § 706(1) claim.

We further note that 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." So even though an "unreasonably delayed" analysis does not rise and fall on a statutory deadline, we are mindful that Congress *has* expressed that immigration-benefit applications should be adjudicated within six months.

As for the fourth *TRAC* factor, the Government argues that the federal courts should decline to grant relief to petitioners "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Gov't Br. at 46 (quoting *Xiaobin Xu v. Nielsen*, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018)). DHS may indeed be resource- and personnel-depleted. But USCIS does not deploy a team of academics to apply sophisticated regulatory criteria to U-visa applications; nor does the adjudication of a single application take years. *Cf. Mashpee*, 336 F.3d at 1100 (describing Bureau of Indian Affairs process for recognizing Native American tribes). We also know nothing about how the nascent BFD EAD process might affect USCIS's procedures or processing times.

All we know is that the average processing time for U-visa applications *before* the issuance of the BFD process was 60.5 to 61 months.[10] *See* USCIS, CHECK CASE PROCESSING TIMES, https://eGov'tuscis.gov/processing-times/ (last visited Jul. 23, 2021).[11] At the Rule 12(b)(6) stage, we cannot conclude that the U-visa-application determination and the bona-fide adjudication are "extremely complex and labor-intensive task[s]." *Mashpee*, 336 F.3d at 1100. Discovery is warranted to better assess "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* at 1102. Nor are we

---

[10]Plaintiffs allege that USCIS takes just twelve minutes to adjudicate a work-authorization application. Barrios Garcia R. 22 (First Am. Compl. at 12–13) (Page ID #152-53); Arguijo R. 28 (Second Am. Compl. at 12) (Page ID #209); Mendez Mendez R. 20 (First Am. Compl. at 13) (Page ID #122); *see also* Patel R. 1 (Compl. at 13) (Page ID #13).

[11]USCIS's publicly available case-processing times were discussed at oral argument. Oral Arg. at 50:49–52:01.

persuaded that USCIS's release of its average U-visa-application processing time should prompt us to decide that Plaintiffs' years-long wait is reasonable. Oral Arg. 50:49–52:01. The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed. We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race.

We sympathize with the burdens that agencies shoulder. *See* Gov't Br. at 44–45; Oral Arg. at 52:50–56. But we cannot supplant the law with the Government's policy argument that agencies should be the sole arbiters of what constitutes an "unreasonable delay" because agencies are best positioned to manage their resources and "courts are ill-equipped to address" resource allocation, even when Plaintiffs have adequately alleged that a delay is unreasonable. Oral Arg. at 52:50–56. Taken to its logical conclusion, the Government's argument would eliminate federal judicial review of any agency action and wipe the APA off the books.

To summarize, Plaintiffs have sufficiently alleged that USCIS has unreasonably delayed the adjudication of their U-visa applications. Because the BFD process was issued after Plaintiffs' complaints were filed, Plaintiffs should be allowed to amend their complaints should they wish to assert that USCIS has unreasonably delayed its determination that their U-visa applications are "bona fide."

## III. CONCLUSION

We conclude by restating our holdings. We hold that the issuance of the BFD Process moots no part of this case. We hold that 5 U.S.C. § 701(a)(1), 8 U.S.C. § 1252(a)(2)(B)(ii), and 5 U.S.C. § 701(a)(2) do not bar the federal courts from reviewing claims that USCIS has unreasonably delayed placing principal petitioners on the U-visa waitlist and adjudicating prewaitlist work-authorization applications. We hold that the federal courts may compel USCIS to place principal petitioners on the U-visa waitlist when an unreasonable delay has occurred per 5 U.S.C. § 706(1). We hold that § 706(1) allows the federal courts to command USCIS to hasten an unduly delayed "bona fide" determination, which is a mandatory decision under 8 U.S.C. § 1184(p)(6) and the BFD process. We hold, however, that the federal courts cannot invoke

5 U.S.C. § 706(1) to force USCIS to speed up an unduly delayed prewaitlist work-authorization adjudication, which is a nonmandatory agency action under 8 U.S.C. § 1184(p)(6) and the BFD process. We hold that Plaintiffs have sufficiently pleaded that USCIS has unreasonably delayed the principal petitioners' placement on the U-visa waitlist. We further hold that Plaintiffs should be permitted to amend their complaints should they wish to challenge any delayed "bona fide" determinations.

We thus **REVERSE** the district courts' grants of the Government's motions to dismiss and **REMAND** for further proceedings.